297 Ga. 460
FINAL COPY

S15A0310. WILLIAMS v. THE STATE.

HINES, Presiding Justice.

Quentric Williams appeals from his convictions and sentences for malice murder, two counts of fleeing or attempting to elude a police officer, and possession of a firearm during the commission of a crime, all in connection with the death of Mitt Lenix. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Williams, a dealer of illegal drugs, attended a drive-in movie theater with his girlfriend, Angel Thomas. At 11:00 p.m., Williams fired a single bullet from his handgun while he and Thomas sat in the back seat of a pickup truck he had rented.

---

[1] Lenix was killed on May 12, 2012. On April 23, 2013, a DeKalb County grand jury indicted Williams for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of the crime of aggravated assault, possession of a firearm by a convicted felon, two counts of aggravated assault on a peace officer, and two counts of fleeing or attempting to elude a police officer. Williams was tried before a jury April 29-May 2, 2013, and found not guilty of the two counts of aggravated assault on a peace officer, and guilty of all other charges. On May 8, 2013, Williams was sentenced to life in prison without the possibility of parole for malice murder, and consecutive terms of five years in prison for possession of a firearm during the commission of the crime of aggravated assault, as well as each count of fleeing or attempting to elude a police officer; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Williams filed a motion for new trial on June 3, 2013, which he amended on May 9, 2014. On July 9, 2014, the motion, as amended, was denied. Williams filed a notice of appeal on August 6, 2014, and the appeal was docketed in this Court for the January 2015 term and orally argued on February 16, 2015.

According to what Williams told Thomas after the shooting, and what he testified to at trial, Williams saw Lenix approaching the truck "ducking and dodging" between cars, putting his hand in his waistband, and reaching for the door of the vehicle. The bullet went through the closed driver's side window and fatally struck Lenix in the chest.

Immediately after the shooting, Williams rapidly drove away from the theater. Law enforcement officers engaged in a high-speed chase, and Williams crashed his vehicle and escaped by foot; he was later arrested. Williams testified at trial that, as far as he knew, he did not fire the bullet that killed Lenix; he stated that he shot above Lenix to scare him away, and fled because he was on probation and believed that a warrant was out for his arrest. A ballistics expert testified that the condition of the projectile fragment recovered from Lenix's body did not allow him to conclude that it was fired from the handgun found in Williams's truck. There was no evidence of any other gunshot having been fired at the drive-in that evening.

1. The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d

2

560) (1979).

2.   Williams asserts that during argument, the State misstated the law regarding justification and told the jury that, as a matter of law, Williams's failure to admit that he fired the fatal shot would preclude the affirmative defense of justification; Williams objected to the argument; the trial court overruled the objection, and informed the jury that the court would provide the law to it.  The trial transcript reveals the following:

> [PROSECUTOR]:  Self-preservation does not equal self-defense.  Self-preservation does not equal self-defense.  [Defense] counsel says it's not relevant that he couldn't — Quentric couldn't bring himself to say that his bullet, even though the evidence is clear he's the only one out there shooting, struck and killed Mitt Lenix.  He says it's not relevant.  But in fact it's probably the most significant relevant information.  Why?
>
> An affirmative defense, his defense, self-defense, I had no choice, I was scared, the affirmative defense requires by law that the defendant admits the doing of the act.  You don't get self-defense if you don't say you did it.  You don't get it.  He wants it all.  He wants to say if I did it, then I had no choice.  But y'all can also find out that I didn't do it.  You don't get it unless you admit it.  It is the most relevant part. And if you don't admit it and you don't get self-defense, then you don't get justification.
>
> You're justified?  What are you justified in doing, Quentric? What are you justified in doing, Quentric?  According to you, you didn't do it.  So what are you justified in doing?  That's why his lawyer was pushing him.  Come on, just say it, just say it.  'Cause he knew, his lawyer knew, and he's supposed to know.  The problem is nobody clued Quentric.

[DEFENSE COUNSEL]: Your honor, I'm going to object to this characterization of the law.

[THE COURT]: At this point in time, I'm going to overrule the objection. I will be providing the law at the conclusion of the trial and the jurors will draw an inference on what was - - what was or was not argued during this course. But objection's noted.

[DEFENSE COUNSEL]: Thank you, Your Honor.

[THE COURT]: All right. I'll allow the lawyers to continue.

[PROSECUTOR]: Nobody clued Quentric that if you can't admit the doing of the act, then you don't get the protection of self-defense in justification. And now the lawyer says what was in Quentric's mind? What was Quentric thinking?

The prosecutor's argument then continued, addressing the concept of "reasonable belief" as it related to the justification defense.

The State asserts that the argument was essentially a comment on Williams's credibility and his inconsistent defenses, i.e., his claims that he did not fire any gunshot that killed Lenix, and that if he did fire the fatal shot, he was justified in doing so. Certainly, Williams was entitled to claim both justification and lack of causation, as "[a] defendant who pursues alternative defense theories is entitled to requested charges on both theories, if there is some evidence to support each theory. [Cits.]" *Bishop v. State*, 271 Ga. 291, 292

4

(3) (519 SE2d 206) (1999). See also *Turner v. State*, 262 Ga. 359, 361 (2) (c) (418 SE2d 52) (1992); *Hendrix v. State*, 268 Ga. App. 455, 456 (1) (602 SE2d 133) (2004). And, the State was free to comment upon Williams's choice to defend against the charges in that manner. See *Davis v. State*, 290 Ga. 757, 759 (3) (725 SE2d 280) (2012) ("It is well settled that counsel 'is permitted wide latitude in closing argument, and any limitation of argument is a matter for the court's discretion.' [Cit.]"). However, we cannot agree with the State's assertion that the prosecutor's argument can be seen as something other than a statement regarding the law, i.e., an attempt to inform the jury that the affirmative defense of justification was not, as a matter of law, available to Williams. The prosecutor specifically told the jury that "the affirmative defense requires *by law* that the defendant admits the doing of the act." (Emphasis supplied.) The prosecutor also told the jury that "if you don't admit it . . . then you don't get justification," and that Williams's attorney "knew [this] and he's supposed to know." Of course, as noted, Williams could pursue the seemingly contradictory defenses of lack of causation and self-defense, *Bishop*, supra, and Williams was entitled to argue self-defense so long as the evidence supported it, whether or not he admitted in his testimony that the gunshot he fired struck

Lenix and caused his death.   The prosecutor thus misstated the law so as to potentially mislead the jury.  See *Long v. State*, 307 Ga. App. 669, 673 (3) (705 SE2d 889) (2011).

But, that does not end the inquiry, and we conclude that no harm arose from the State's argument.  See *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006).  Rather, the court informed that jury that it would provide the law to be used in the jury's deliberations, and it did so.  See *Spivey v. State*, 253 Ga. 187, 189-190 (3) (a) (319 SE2d 420) (1984).  The court instructed the jury that the closing arguments were not evidence, and that it was the court's

> duty and responsibility to determine the law that applies to this case and to instruct you on that law.  You are bound by these instructions.  It is your responsibility to determine the facts of the case from all the evidence presented.  Then you must apply the law I give you in the charge to the facts as you find them.

Furthermore, the court fully instructed the jury on the defenses of mistake of fact and justification.  Accordingly, the court made it clear that instruction on the law would come from the court, negating any harmful effect of the prosecutor's misstatement of the law.  Id.  Moreover, at the conclusion of the court's charge, Williams stated that he had no objections to the charge; if Williams believed that the court's charge did not go far enough to correct the

6

prosecutor's misstatement, he could have asked for additional instructions.[2]

3. In its charge to the jury immediately before deliberations, the trial court instructed the jury:

An affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Once an affirmative defense is raised, the burden is on the State to disprove it beyond a reasonable doubt.

This instruction was, verbatim, that which Williams had requested the court give the jury. Williams made no objection to the instruction at trial, and now contends that it was plain error within the meaning of OCGA § 17-8-58 (b)[3] to

---

[2] Williams asserts that, despite the court's action at the time of the objection, its instruction in its charge to the jury that "[a]n affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it," see Division 3, infra, exacerbated beyond any cure what he contends is confusion created by the prosecutor's argument; but, the separate roles of the court and counsel were made clear. While Williams might have sought an instruction from the court that clarified that, under the specific facts of this case, the language "admits the doing of the act charged" referred to the act of firing his pistol as the "relevant act that was directly connected to his [affirmative] defense," *Price v. State*, 289 Ga. 459, 461 (2) (712 SE2d 828) (2011), he did not do so. Williams requested and received a jury instruction on the law of mistake of fact.

[3] OCGA § 17-8-58 reads:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.
(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

give the instruction. As this Court has stated, the test for determining if there has been plain error in jury instructions under OCGA § 17-8-58 (b) is:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. [Cit.]

*Cheddersingh v. State*, 290 Ga. 680, 683 (2) (724 SE2d 366) (2012).

Assuming that Williams did not affirmatively waive this alleged error by requesting the instruction of which he now complains, see *Woodard v. State*, 296 Ga. 803, 809 (3) (a) (771 SE2d 362) (2015); *Shaw v. State*, 292 Ga. 871, 873, n. 3 (742 SE2d 707) (2013), the alleged error is not clear or obvious, and thus, fails to meet the second prong of the plain error test.

The instruction at issue appears in this State's pattern jury instructions, see Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.00.00 (4th ed. 2007), and has been

approved in multiple opinions of the Appellate Courts of this State.[4]  See, e.g.,

*Brown v. State*, 267 Ga. 350 (2) (478 SE2d 129) (1996); *Ferguson v. State*, 322

Ga. App. 565, 569 (2) (c) (745 SE2d 784) (2013); *Taylor v. State*, 231 Ga. App.

73 (2) (498 SE2d 552) (1998).  Accordingly, it cannot be said that in giving the

requested instruction, the trial court committed an error that was clear or

obvious.  See *Wilson v. State*, 291 Ga. 458, 460 (729 SE2d 364) (2012); *State*

*v. Kelly*, 290 Ga. 29, 34 (2) (b) (718 SE2d 232) (2011).

4.  Williams also contends that the trial court committed plain error in the

context of OCGA § 17-8-58 (b) when it instructed the jury on the use of

testimony of a law enforcement officer about a prior incident in which Williams

fled from the officer after being stopped for speeding; the officer began to

investigate the smell of marijuana emanating from Williams's vehicle, and

Williams snatched his driver's license from the officer's hand and rapidly drove

away.[5]  The evidence was admitted to show Williams's intent under OCGA §

---

[4] It appears that the first articulation of the principle in its current form was taken from a definition that appeared at 21 AmJur2d 204, § 135. See *Chandle v. State*, 230 Ga. 574 (3) (198 SE2d 289) (1973); *Radford v. State*, 202 Ga. App. 532, 533, n. 1 (415 SE2d 34) (1992).

[5] Williams was charged with two counts of fleeing or attempting to elude a police officer. Although he contends that his admission that he fled from police removed any question of those crimes from the jury's consideration, and hence, obviated the need for the State to present any evidence regarding his intent as to those crimes, his "plea[s] of not guilty contested every allegation

24-4-404 (b).[6]

At trial, Williams objected to the admission of this evidence,[7] and in response to the trial court's query, stated that he had no objection to the

_____

of the criminal charges against him that was necessary to establish guilt." *Graves v. State*, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998), disapproved on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2) (537 SE2d 80) (2000).

[6] OCGA § 24-4-404 reads:
(a) Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:
(1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under paragraph (2) of this subsection, evidence of the same trait of character of the accused offered by the prosecution;
(2) Subject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; or
(3) Evidence of the character of a witness, as provided in Code Sections 24-6-607, 24-6-608, and 24-6-609.

(b) Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

[7] In this Court, Williams does not enumerate as error the admission of the evidence.

10

instruction the court proposed to give, but reiterated his objection to the evidence. Prior to the testimony about the prior incident, the court instructed the jury:

> The State is offering this evidence of other crimes, wrongs, and act allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purpose. You may not infer from such evidence that the defendant is of a character that would commit such crimes. Evidence may be considered only to the extent that it may show the intent to prove in the crimes charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose. The defendant is on trial for the offenses charged in the indictment only and not for any other acts, even though such acts may incidentally be criminal. Before you may consider any such alleged acts for the limited purpose stated, you must first determine whether the accused committed the other alleged acts. If so, you must then determine whether the act shed any light on the elements of the offenses for which the act was admitted in the crimes charged in the indictment in this trial. Remember to keep in mind the limited use and prohibited use of this evidence about other acts of the defendant. By giving this instruction, the court in no way suggests that the defendant has or has not committed any other acts, nor whether such acts, if committed, prove anything. This is solely a matter for your determination.

In its charge to the jury just before deliberation, the court repeated this instruction virtually verbatim.

The State asserts that this limiting instruction, too, tracks the pattern jury instructions. And this is correct, although the instruction was given

11

inaccurately; had the pattern charge been followed exactly, the fourth sentence would have read, "[e]vidence may be considered only to the extent that it may show the intent **that the State is required** to prove in the crimes charged in the case now on trial." See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.34.10 (4th ed. 2007) (Emphasis supplied.) Nonetheless, despite the trial court's misstatement, Williams fails to meet the third prong of the plain error test, which requires that "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings." *Cheddersingh*, supra.

The court's charge to the jury included instructions that: intent is an element of any crime, to be proven by the State beyond a reasonable doubt; intent may not be presumed, but may be inferred from the proven circumstances, or by the acts and conduct of the accused; and that criminal intent means the intention to commit the act prohibited, which could be found "upon a consideration of the words, conduct, demeanor, motive, and other circumstances connected with the act for which the accused is being prosecuted." Viewing the contemporaneous instructions and jury charges as a whole, the jury was given

a proper understanding of the concept of intent and the State's burden to prove it beyond a reasonable doubt, and the failure to give the complete limiting instruction as set forth in the pattern jury instructions did not render deficient the court's instructions as to how the jury was to view the evidence of the prior incident. See *Sedlak v. State*, 275 Ga. 746, 751 (2) (f) (571 SE2d 721) (2002). Accordingly, even though the contemporaneous instruction was not complete as set forth in the pattern jury instructions, there is no likelihood that the instruction regarding "intent to prove" affected the jury's verdicts. See *Choisnet v. State*, 295 Ga. 568, 572-573 (2) (761 SE2d 322) (2014).

Judgments affirmed. All the Justices concur, except Hunstein, J., who concurs in judgment only as to Division 2.

Decided June 1, 2015 – Reconsideration denied July 6, 2015.

Murder. DeKalb Superior Court. Before Judge Adams.

Gerard B. Kleinrock, for appellant.

Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Zina B. Grumbs, A'Sheika L. Penn, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.