314 Ga. 588
FINAL COPY

S22A0463. THE STATE v. BROWN.

COLVIN, Justice.

In connection with the fatal shooting of Stacey Monts and the shooting of Mario Roscoe, a Fulton County grand jury jointly charged appellee Terrell Brown and co-defendants Milton Rufus Hall and Andrew Dontavius Glass with malice murder, felony murder, aggravated assault, armed robbery, aggravated battery, and possession of a firearm during the commission of a felony.[1] Brown filed a pretrial motion for immunity from prosecution under OCGA § 16-3-24.2[2] based on self-defense. Following a hearing on the

---

[1] The crimes allegedly occurred on July 14, 2018. On October 16, 2018, the grand jury issued a 13-count indictment. Brown was jointly charged with his co-defendants in Counts 1-3 and 6-11, which charged the following offenses: malice murder (Count 1); felony murder predicated on armed robbery (Count 2); felony murder predicated on aggravated assault (Count 3); armed robbery (Count 6); aggravated assault of Monts and Roscoe (Counts 7 and 8, respectively); aggravated battery of Roscoe (Count 9); and possession of a firearm during the commission of a felony (Counts 10 and 11). The remaining charges named only Brown's co-defendants.

[2] See OCGA § 16-3-24.2 (providing that "[a] person who uses threats or

motion, the trial court issued an order granting Brown immunity on most of the charges against him. The court's ruling, however, omitted any reference to Count 6, which charged Brown and his co-defendants with committing an armed robbery by "tak[ing] a handgun" from Monts.

On appeal, the State argues that the court's failure to grant immunity on the armed-robbery charge conflicted with its grant of immunity on the other charges because, under OCGA § 16-3-21 (b) (2), a person cannot be justified in using force while "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony," such as armed robbery. As explained below, the State correctly identifies a *potential* conflict within the trial court's ruling. However, the record on appeal does not permit us to determine whether the trial court erred because we cannot discern whether the court even ruled on whether Brown was entitled to immunity on Count 6, much less that the court denied Brown

---

force in accordance with Code Section 16-3-21 [addressing self-defense] . . . shall be immune from criminal prosecution therefor").

immunity on that count. Because the record on appeal is insufficient for meaningful appellate review, we vacate the judgment and remand the case for further clarification and analysis consistent with this opinion. See *Hughes v. State*, 296 Ga. 744, 746 (1) n.6 (770 SE2d 636) (2015) ("If the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings.").[3]

1.    Brown filed a pretrial motion for immunity from prosecution, which co-defendant Hall joined.[4] Following a three-day hearing on the motions, where Brown, Hall, Roscoe, and other witnesses testified, the court found the following, in relevant part. On July 14, 2018, Monts, Roscoe, and another friend arrived at the home of Brown and Hall, where Glass was also living, "for an afternoon of gambling [with dice] and smoking weed." "[T]here was no animosity existing between anyone" when the dice game began,

---

[3] The State also raises several arguments challenging specific findings of fact made by the trial court. For the reasons stated below, the State's arguments fail.

[4] Although co-defendant Glass also initially joined the motion, he withdrew his request for immunity partway through the immunity hearing.

and the players engaged only in "the typical fussing . . . over details of the game" as the game developed. At some point before the shooting, however, "there was commotion surrounding the whereabouts of Monts'[s] gun." Brown, who was not gambling, "ultimately found [the gun] in between the cushions of the living room couch and returned it to Monts, while trying to assure him nobody there was trying to steal his gun." Despite Brown's assurances and the fact that Monts had been winning the dice game, "Monts remained upset about the misplacement of his gun." At some point during the game, "folks started shooting three loaded weapons," killing Monts and causing Roscoe and Hall to sustain serious gunshot injuries in the "cross-fire." When law enforcement officers and EMS arrived, "the cash, guns[,] and stash of pot were gone."

The court noted that "Brown and Hall each testified that they fired a weapon in self-defense only *after* Monts began shooting"; that Hall testified that he shot Monts in response to being shot by Monts; and that Brown testified that, when he saw Monts shoot at Hall,

4

Brown reached for a "rifle stashed under the futon where he was sitting . . . and fired back toward Monts . . . out of fear that Monts would shoot him next." (Emphasis in original.)

Addressing Hall's motion for immunity, the court found that "[t]he evidence was conflicting as to whether Monts shot Hall first and why, or vice versa." The court questioned the plausibility of both the State's theory of the case ("that Brown and Hall decided to rob Monts and Roscoe in their home after handing Monts his gun") and the defense's theory of the case ("that Monts would end a dice game where he [was] ahead by thousands of dollars by shooting the losing player"). The court called both theories "far-fetched." The court further found that "[t]he odds in favor of" young men (i.e., Hall and Monts) "exercis[ing] . . . good judgment" — while playing a "high stakes dice game[,] . . . handling guns[,] and smoking pot on a hot summer day" — were "dangerously low." Accordingly, the court concluded that "Hall ha[d] failed to show by a preponderance of the evidence that he [was] entitled to immunity."

"[R]egardless of whether Monts or Hall initiated the gunfire,"

5

however, the court found that "Brown ha[d] shown by a preponderance of the evidence that he fired his weapon in self-defense." As noted above, the court found that the State's theory of the case (that Brown and Hall decided to rob Monts at their own home, after Brown handed a gun to Monts) "seem[ed] far-fetched." The court further found that "[n]o one contradicted Brown's explanation as to when and why he shot his weapon" — that Brown fired only after seeing Monts shoot at Hall and that he fired in self-defense because he feared for his life. Accordingly, the court ruled that Brown was "entitled to immunity from prosecution on Counts 1, 2, 3, 7, 8, 9, 10 and 11." The court's ruling omitted any reference to the armed-robbery charge (Count 6).

2. On appeal, the State contends that the trial court abused its discretion in granting Brown immunity from prosecution on any of the charges against him under OCGA § 16-3-24.2. In relevant part, OCGA § 16-3-24.2 provides that "[a] person who uses threats or force in accordance with Code Section 16-3-21 . . . shall be immune from criminal prosecution therefor." OCGA § 16-3-21, in turn,

6

provides that a person who "reasonably believes that [deadly] force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony" is generally justified in using such force. OCGA § 16-3-21 (a). This general rule, however, is subject to an important exception: a person who uses deadly force while "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony" is not justified in using such force. OCGA § 16-3-21 (b) (2).

"To avoid trial, a defendant bears the burden of proof to show that he is entitled to immunity by a preponderance of the evidence." *Hughes v. State*, 312 Ga. 149, 156 (4) (861 SE2d 94) (2021). Accordingly, a defendant must show by a preponderance of the evidence not only that he "reasonably believe[d] that [deadly] force [was] necessary" under the circumstances, OCGA § 16-3-21 (a), but also that he did not use deadly force while "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony," OCGA § 16-3-21 (b) (2). On appeal, we view

7

the evidence "in the light most favorable to the trial court's ruling." *Hughes*, 312 Ga. at 156 (4). "[T]he trial court's findings of fact and credibility determinations are accepted if there is any evidence to support them." Id.

In arguing that the trial court erred in granting Brown immunity from prosecution on any count, the State relies upon two factual premises. First, the State asserts that the trial court "denied [Brown] immunity for the armed robbery charge." Second, the State asserts that "inherent in the trial court's [denial of immunity on the armed-robbery charge] is a factual finding that Brown was committing a felony when he shot the victims." Based on these factual premises, the State concludes that, as a matter of law, Brown was not entitled to immunity on any charge because, under OCGA § 16-3-21 (b) (2), a person who uses deadly force while committing a felony is not entitled to immunity under OCGA § 16-3-24.2.[5]

---

[5] Brown was charged with committing armed robbery, which is a felony, by using his firearm to "take [Monts's] handgun." See OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate

The logic of the State's argument is sound, at least as to the armed-robbery offense charged here, *if* the trial court *denied* Brown immunity on the armed-robbery charge (Count 6) *because* he failed to carry his burden by a preponderance of the evidence to show that he was not engaged in an armed robbery when he shot at Monts. OCGA § 16-3-21 (b) (2) would have then precluded him from receiving immunity on any of the remaining counts, all of which arose from the same shooting. The record on appeal, however, does not permit us to determine the accuracy of these factual premises.

First, the record does not establish whether the court issued *any* ruling as to whether Brown was entitled to immunity on Count 6, much less that the court *denied* Brown immunity on that count. Because Count 6 was simply omitted from the court's determination that Brown was "entitled to immunity from prosecution on Counts 1, 2, 3, 7, 8, 9, 10 and 11," the record does not include any express ruling on immunity as it applied to the armed-robbery charge. Nor

presence of another by use of an offensive weapon . . . ."). See also OCGA § 16-8-41 (b) (felony punishment provision for armed robbery).

9

does the record clearly show that Brown sought immunity on Count 6, and thus that the court was required to rule on the matter.[6] Brown's written motion for immunity from prosecution did not identify which specific counts were subject to the motion, and, at the immunity hearing, Brown's counsel made confusing statements about Count 6, suggesting at one point that the armed-robbery charge would not "go away" based on the "immunity defense."[7] But he also argued at length that the State's armed-robbery theory was not supported by the evidence and "just simply . . . doesn't make sense" because even "the dumbest criminal" would not "invit[e] [people] over to [his own] house to rob them" or "give someone a gun back and then attempt to rob them." The record is silent on how the court interpreted these arguments and whether it might have reasonably concluded, in the context of the hearing as a whole, that

---

[6] If it were clear from the record that Brown sought immunity on Count 6, we might reasonably infer that the court's omission of Count 6 from its ruling was an implicit denial of immunity on that count.

[7] How to interpret the statement of Brown's counsel that immunity would not make the armed-robbery charge "go away" is further complicated by the fact that counsel's purported basis for the statement was an argument made by Hall's counsel. Hall's counsel, however, expressly argued that immunity *did* apply to the armed-robbery charge.

Brown did not seek immunity on Count 6. Because the record is not clear as to whether Brown sought immunity on Count 6 (and thus whether the court considered such an argument), we cannot conclude that the court's omission of Count 6 was necessarily an implicit denial of immunity. The omission might have instead been a mere failure to rule on Count 6, which would not conflict with granting immunity on the other counts: if the court did not consider whether Brown was entitled to immunity on Count 6, it still might have granted immunity on the other counts if it found by a preponderance of the evidence that Brown was not committing an armed robbery when he fired his gun.

Second, although the State asserts that "inherent" in the trial court's order is a finding that Brown failed to carry his burden to show he was not engaged in an armed robbery, nothing in the court's order supports that assertion. At the immunity hearing, the parties did not raise OCGA § 16-3-21 (b) (2) as a potential barrier to immunity, and the court did not expressly determine in its order whether Brown showed by a preponderance of the evidence that he

11

was not engaged in a felony when he fired at Monts. Moreover, the court's findings suggest that it implicitly found that Brown *did* carry his burden to prove he was not engaged in an armed robbery. Not only did the court find that "the State's theory that Brown and Hall decided to rob Monts and Roscoe in their home, after handing Monts his gun[,] seem[ed] far-fetched," but it also found that Brown had carried his burden to show he was entitled to immunity on Count 2, which charged Brown with felony murder predicated on armed robbery.[8] These are findings that we cannot disregard on appeal. See *Hughes*, 296 Ga. at 746 (1) ("[A]n appellate court generally must accept [trial court] findings [on disputed factual issues] unless they are clearly erroneous."). Still, we cannot be sure what conclusion the court reached because it failed to make an express finding on whether Brown proved he was not engaged in a felony, such as armed robbery, when the shooting occurred. Id. ("[A]n appellate

---

[8] Counts 10 and 11, which charged Brown with possession of a firearm during the commission of a felony, also charged armed robbery as a predicate felony, although additional predicate felonies were charged as well.

court generally must limit its consideration of the disputed facts to those expressly found by the trial court.").[9]

In sum, the record on appeal is insufficient for us to determine whether the court ruled on immunity as to Count 6, much less to determine that the court denied Brown immunity on that count and why. Moreover, nothing in the record would preclude the trial court from determining on remand that Brown sought immunity on Count 6, that he carried his burden to show that he did not engage in an armed robbery, and that he may have been entitled to immunity on Count 6, in addition to the other counts. Because the record does not permit us to assess whether the trial court erred, a remand is necessary for further clarification and analysis. See *Hughes*, 296 Ga. at 746 (1) n.6.

---

[9] The dissent states that, "as a matter of law," Brown is not entitled to immunity on any charges against him because "Brown remains under indictment for armed robbery." Dissent at 597. No legal authority supports this proposition. To the contrary, as explained above, the relevant legal question for immunity is whether Brown carried his burden to show by a preponderance of the evidence that he was not committing, attempting to commit, or fleeing after the commission or attempted commission of an armed robbery when he used deadly force. See *Hughes*, 312 Ga. at 156 (4). See also OCGA § 16-3-21 (b) (2). If he carried that burden, he was entitled to immunity on the other counts, even if the armed-robbery charge remained pending against him.

13

3. The State also argues on appeal that the evidence presented at the immunity hearing did not support several of the trial court's findings. We disagree. First, the State argues that the court clearly erred in finding that "*[n]o one contradicted* Brown's explanation as to *when and why* he shot his weapon." (Emphasis in original.) According to the State, Roscoe's testimony contradicted the testimony of Brown and other witnesses as to when and why Brown shot his gun because there were conflicting details in the witnesses' accounts. Specifically, the State argues that Roscoe testified that "it was after Hall fired the first shot at Monts, and Monts ended up on the ground and was firing back at Hall, that Brown started shooting at Monts" and that "Monts fired back at Hall, not at Brown." According to the State, this testimony contradicted the testimony that "Brown did not start shooting until after Monts fired the first shot" and that "[Brown] shot at Monts because Monts was firing in his direction."

The trial court, however, did not find that there were no conflicts in the testimony about precisely how events unfolded.

Rather, the court found that no one contradicted Brown's testimony that he fired at Monts *after* seeing Monts shoot at Hall and that Brown fired *out of fear that he would be shot*. Because Roscoe also testified that Brown did not shoot until after Monts shot at Hall, Roscoe's testimony does not show that the trial court clearly erred in finding that no one contradicted Brown's account of *when* he fired at Monts. Further, because Roscoe's testimony that Monts was shooting at Hall, rather than at Brown, did not show that Brown did not fear being shot, Roscoe's testimony does not show that the trial court clearly erred in finding that no one contradicted Brown's account of *why* he fired his gun.

Second, the State argues that the trial court clearly erred in finding that Brown fired in self-defense because, according to the State, Brown's belief that Monts would shoot him after shooting Hall was unreasonable. However, we must "accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." *Gude v. State*, 313 Ga. 859, 871 (6) (874 SE2d 84) (2022) (citation and punctuation omitted). Here, the trial

15

court credited Brown's testimony that he feared being shot by Monts when gunfire erupted in "the circle of gamblers" near "the futon where [Brown] was sitting." Based on the evidence presented at the immunity hearing, the trial court was authorized to find that Brown reasonably fired in self-defense.

Finally, the State argues that no evidence supported the trial court's finding that Brown was entitled to immunity on the charges of aggravated assault and aggravated battery against Roscoe (Counts 8 and 9).[10] The State contends that there was no reason to shoot at Roscoe, who was between Hall and Monts when the shooting started, because Roscoe was unarmed and could not have been a threat to Brown. However, we owe deference to the trial court's decision to credit Brown's testimony that he "fired back toward Monts," not at Roscoe. Because the court found that Brown carried his burden to show that he was justified in shooting at

---

[10] Although the State also asserts that "the trial court's order is silent on Brown's self-defense claim for Brown's shooting of Roscoe," that is not the case. The trial court expressly found that Brown had carried his burden of proof to show he fired in self-defense as to the counts that charged offenses against Roscoe.

Monts, the court was authorized to conclude that Brown was also entitled to immunity as to the charged offenses against Roscoe, who was not Brown's intended target. See *Howard v. State*, 307 Ga. 12, 22 (5) (834 SE2d 11) (2019) ("Under th[e] principle[ of transferred justification], no guilt attaches if an accused is justified in shooting to repel an assault, but misses and kills an innocent bystander." (citation and punctuation omitted)); *Allen v. State*, 290 Ga. 743, 746 (3) (723 SE2d 684) (2012) (noting that a defendant should be acquitted based on "the doctrine of transferred justification" if the factfinder "determine[s] he was justified in firing his weapon, regardless of whom the bullet struck").[11]

4.  On remand, the trial court is directed to make an express finding as to whether Brown carried his burden to prove by a preponderance of the evidence that he was not engaged in an armed robbery when the shooting occurred. If the court finds that Brown

---

[11] The evidence presented at the immunity hearing did not clearly establish who (Brown, Hall, or Monts) shot Roscoe, and the court made no express finding on that matter. However, the court was authorized to conclude that, to the extent that Brown unintentionally shot Roscoe, he was justified in doing so.

17

did not carry his burden on this point, it is directed to deny Brown immunity as to all counts against him, in accordance with OCGA §§ 16-3-21 (b) (2) and 16-3-24.2. If, on the other hand, the court finds that Brown did carry his burden to show that he was not engaged in an armed robbery when the shooting occurred, the court is further directed to (1) clarify whether and why it grants, denies, or issues no ruling on whether Brown was entitled to immunity on Count 6, (2) expressly determine whether Brown carried his burden to show he was entitled to immunity on the other counts, and (3) issue rulings consistent with its findings.

*Judgment vacated and case remanded with direction. All the Justices concur, except Ellington and LaGrua, JJ., who dissent.*

ELLINGTON, Justice, dissenting.

A Fulton County grand jury indicted Terrell Brown on charges of malice murder, felony murder, armed robbery, and other offenses related to the fatal shooting of Stacey Monts and the shooting of Mario Roscoe. The charges brought by the State were based on its theory that Brown and his co-defendants shot Monts and Roscoe during an armed robbery. Prior to trial, Brown filed a motion seeking "immunity from prosecution" under OCGA § 16-3-24.2, in which he admitted he shot Roscoe but claimed he shot him in self-defense. Following a hearing on Brown's motion, the trial court issued an order granting immunity to Brown on "Counts 1, 2, 3, 7, 8, 9, 10 and 11," all counts in which he was charged, except for Count 6. The State alleged in Count 6 that Brown and his co-defendants committed an armed robbery by taking a handgun from Monts.

The State appealed, arguing that Brown was precluded from seeking immunity based on self-defense for any of the charged crimes because the State had alleged that Brown was in the commission of an armed robbery at the time he committed the

crimes. See OCGA § 16-3-21 (b) (2). Brown did not file an appeal from the trial court's immunity order, which left unaffected the armed robbery count of the indictment.[12] Thus, as this case appears before us, Brown remains under indictment for an armed robbery the State alleges he committed while in the commission of the other crimes with which he was charged.

Despite these indisputable facts and well-established Georgia law precluding the grant of immunity from prosecution to a person who uses force against another when "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony," OCGA § 16-3-21 (b) (2), the majority finds the record on appeal is insufficient to render a decision because it "cannot discern whether the court even ruled on whether Brown was entitled to immunity on Count 6." Maj. Op. at 588. Although I share some of the majority's concerns regarding the dearth of findings and

---

[12] Pertinent to this appeal, the trial court made no findings of fact specifically related to the armed robbery charge for which it declined to grant Brown immunity.

conclusions in the trial court's immunity order,[13] no clarification or speculation as to the trial court's intent is necessary to reach the conclusion that reversal is required in this case.[14] Even assuming, as the majority argues, that it is not clear from the trial court's order that the court denied Brown's request for immunity as to Count 6, that the trial court failed to rule on Brown's request for immunity from prosecution on Count 6, or that Brown withdrew his request for immunity, it is indisputable that Count 6 was unaffected by the trial court's immunity order — an order from which Brown did not appeal. Therefore, regardless of any speculation by this Court as to whether Brown meant to include Count 6 in his motion for immunity when he sought immunity from prosecution "in this case," regardless of the rationale behind the trial court's legal conclusions, and

---

[13] It is unclear from the record whether the trial court even considered OCGA § 16-3-21 (b) in ruling on Brown's motion for immunity. Neither the State nor Brown mentioned the statute or its preclusive effect in their trial court briefs, and the statute was not mentioned at the immunity hearing or in the trial court's immunity order. This omission may explain why the trial court concluded it was authorized to grant immunity to Brown on Counts 1, 2, 3, 7, 8, 9, 10, and 11 while leaving Count 6 unaffected.

[14] Nevertheless, this case illustrates why it is important for trial courts to include clear and thorough findings of fact and conclusions of law in their orders.

regardless of whether Brown shot his gun in self-defense when he shot Roscoe, Brown remains under indictment for armed robbery, and, as a matter of law, is not entitled to immunity from prosecution on the other charges involving the use of force intended or likely to cause death or great bodily harm, which he is alleged to have committed while in the commission of the armed robbery.[15] See *Reynolds v. State*, 275 Ga. 548, 549 (2) (569 SE2d 847) (2002) (no error in trial court's refusal to give jury charge on defense of a third party where evidence showed defendant was either in the commission of or a party to an armed robbery when he shot the

_____

[15] The majority opinion too narrowly construes the application of OCGA § 16-3-21 (b) by stating that "if the court did not consider whether Brown was entitled to immunity on Count 6, it still might have granted immunity on the other counts if it found by a preponderance of the evidence that Brown was not committing an armed robbery when he fired his gun." Maj. Op. at 592. OCGA § 16-3-21 (b) (2) precludes the grant of immunity from prosecution to a person who uses force when "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony." Thus, under the facts of this case, Brown would not be entitled to immunity on the other charges if he could be found guilty of committing an armed robbery, as either the perpetrator or a party to the crime, regardless of when he fired his gun. Similarly, even if the court merely failed to rule on Count 6, as suggested by the majority opinion, Brown would not be entitled to immunity under OCGA § 16-3-21 (b) for his other charged crimes because he was indicted for having committed those crimes during the commission of a felony for which he remains under indictment.

22

victim because OCGA § 16-3-21 (b) "specifically provides that a person who is committing a felony is not justified in his use of force").

For this reason, I would hold that the trial court erred when it granted Brown immunity from prosecution on Counts 1, 2, 3, 7, 8, 9, 10, and 11 of the indictment and reverse the judgment of the trial court.[16]

I am authorized to state that Justice LaGrua joins in this dissent.

---

[16] Because this case will be remanded to the trial court for "further clarification and analysis," I also note that absent from the trial court's original immunity order is any analysis related to whether Brown could be found guilty as a party to the crimes of his co-defendants or whether the admitted sale of marijuana in the apartment before the shooting might also preclude the grant of immunity to Brown on any of the crimes with which he is charged. See OCGA § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto.").

Decided September 20, 2022.

Murder. Fulton Superior Court. Before Judge Tusan.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Juliana Y. Sleeper, Elizabeth Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Banks Weaver, J. Gabriel Banks; Keisha A. Steed*, for appellee.