320 Ga. 92
FINAL COPY

S24A0999. HARRIS v. THE STATE.

PINSON, Justice.

Denarius Harris shot and killed Dallas Spruill. At trial, Harris claimed that he killed Spruill in self-defense, but the jury rejected that claim and found Harris guilty of felony murder predicated on aggravated assault. On appeal, Harris contends that a part of the trial court's jury instructions about self-defense — that a defendant cannot claim self-defense if he was in the process of committing a felony when he used force against another person — was plainly erroneous because it effectively prevented the jury from ever finding that he shot Spruill in self-defense, since the shooting itself satisfied the elements of aggravated assault, a felony. He also contends the trial court's instruction on self-defense placed undue emphasis on the use of deadly force, which could have led the jury to believe self-defense is not a defense to other felonies. But the trial court's jury

instructions were correct statements of the law and tracked the pattern jury instructions, and they had little chance of confusing the jury in the ways Harris claims. So we affirm Harris's convictions and sentence.

1. Harris was convicted of felony murder and a gun charge in connection with the shooting death of Spruill.[1] The evidence at trial showed the following.

Around midday on the day of the killing, Spruill was picked up at his house by Christian Boss. Spruill was planning to sell some TVs, and Boss, who had a car, had agreed to give him a ride. The

---

[1] Spruill was killed on February 10, 2017. On November 28, 2017, a Fulton County grand jury indicted Harris for malice murder (Count 1), felony murder predicated on armed robbery (Count 2), felony murder predicated on aggravated assault (Count 3), armed robbery (Count 4), aggravated assault (Count 5), and possession of a firearm during the commission of a felony (Count 6). Harris was tried by a jury from May 6 to 9, 2019. The jury found Harris guilty of felony murder predicated on aggravated assault, aggravated assault, and the firearm charge, and found him not guilty of the remaining charges. The trial court sentenced Harris to life in prison for felony murder and a consecutive five-year prison term for possession of a firearm. The aggravated assault count merged for sentencing. Harris filed a timely motion for new trial, which he later amended through new counsel. On September 12, 2023, the trial court denied the motion for new trial, as amended, after a hearing. Harris filed a timely notice of appeal. The case was docketed to the August 2024 term of this Court and submitted for a decision on the briefs.

two men loaded the TVs from Spruill's house into the trunk of Boss's car, then went to another neighborhood to pick up a friend of Spruill's, Pamela Blue. The group then went ahead with the plan. They sold a few TVs at different locations around Atlanta, and then they made a stop at an abandoned house so that Spruill and Blue could retrieve more TVs, as well as an assault rifle. When the group had one more TV to sell, Blue said she knew someone who might buy one and directed them to an apartment complex where they could meet him.

The fatal confrontation between Harris and Spruill unfolded when they arrived at that apartment complex. The jury heard three versions of these events: one from Boss, one from a witness who lived at the complex, Daikeisha Watts, and the third from Harris himself, who testified in his own defense. All three accounts agreed that Harris (or a man who could have been Harris) shot Spruill. But the accounts differed about the circumstances of the shooting.

Boss testified that when the group arrived at the apartment complex, Blue called the buyer, and then went to meet him while

Spruill and Boss remained in the car. Several minutes later, Blue returned with the buyer: Harris. Everyone got out and went to the trunk to look at the TVs. Then Spruill, Boss, and Blue got back in the car, with Boss in the driver's seat, Blue in the front passenger seat, and Spruill in the back. Harris stayed outside the car near the back door. Blue's door was open and Spruill's window was down, so the group could easily talk. Harris asked the group if they were in a gang. The group said they were not. Blue, in the front seat, then asked to see the assault rifle from the trunk so she could fire a shot for fun. Spruill reached into the trunk (part of the rear seat was folded down to allow access from the cabin) and handed the rifle to Blue. As Spruill did so, Boss saw that he had a handgun "on his waist." Blue took the rifle and tried to load it. Harris opened Spruill's door and the group continued making small talk.

About 30 seconds later, Harris said, "Give it up," and Spruill said, "Watch out." Then three quick shots were fired, and Spruill was hit. Boss ran away and called the police. After police arrived, Boss returned to the scene and identified himself.

The testimony of the second witness, Watts, was mostly consistent with Boss's, but with a few differences — including that she did not identify any of the people in her narrative. Watts said that when the group's car arrived at the apartment complex, only two people were inside, not three. The driver got out and walked away as soon as they got there, leaving one person in the front passenger seat. About five minutes later, two different people came up to the car, both holding guns. The two newcomers held the man in the car at gunpoint and made him pop the trunk. The man in the car got out with his hands up and went back to the trunk. Then, "all of a sudden," the two people with guns opened the back door of the car and pushed the third man into the back seat. Someone said, "Give it up, p***y," and multiple shots were fired. The man in the car was hit and the two others ran off. Watts called 9-1-1. After the police arrived, the driver of the car, who had been absent the whole time, came back and identified himself to officers.

The third recounting of Spruill's death came from Harris. Harris testified that on the day of the killing, he was walking around a

5

friend's apartment complex when he ran into Blue, whom he knew. Blue said that she had a friend who was trying to sell some TVs, and Harris said he would be interested in buying one. Harris went to get money. When he came back, Blue was in the front passenger seat of the car she had arrived in, holding an AK-47 assault rifle. Boss was in the driver's seat and Spruill was in the back seat. Harris saw that Spruill was holding a gun in his lap.

Blue got out of the car, showed Harris the TV in the trunk, and then went back to the front passenger door. But at this point Harris was no longer interested in buying a TV. He was afraid. He thought about "a way to get out of this situation safely." He told Spruill he did not want to buy the TV and began backing away from the car.

As Harris started to step back, he saw Spruill's right arm — the one holding the gun — rise up as Spruill appeared to turn toward him. Fearing for his life, Harris pulled out his own gun and shot at Spruill. When he was a safe distance away, Harris ran.

Several months later, Harris was arrested after the police got his name from another resident of the apartment complex.

2. Harris contends that the trial court committed plain error when it instructed the jury about self-defense. He points to the court's instruction that a defendant cannot claim that he used force in self-defense if he was committing a felony at the time. In Harris's view, that instruction was incomplete because it omitted the key point that committing a felony does *not* disqualify a defendant from claiming self-defense if that felony was itself justified.

(a) At the charge conference, the trial court, the State, and Harris's counsel consulted the pattern jury instructions to craft a jury instruction about self-defense. The parties agreed that the jury should be instructed that a person may not claim self-defense if he was attempting to commit or was committing a felony at the time. And they agreed that the jury should be told that the "arguable felony" that Harris may have been committing here was attempted armed robbery.

The court's jury instructions on self-defense were consistent with what was discussed at the charge conference. The court told the jury that self-defense is an affirmative defense, and that once a

defendant raises it, the burden is on the State to disprove it beyond a reasonable doubt. The court explained that the use of force could be justified "to the extent that [the defendant] reasonably believed that such threat or force is necessary to defend himself against the other's imminent use of unlawful force." And the court instructed the jury that the use of deadly force could be justified "only if [the defendant] reasonably believes that such force is necessary to prevent death or great bodily harm to himself."

The court then told the jury that a person cannot claim self-defense if he is in the process of committing a felony, as follows:

> A person is not justified in using force if that person is attempting to commit or is committing a felony. Criminal attempt to commit armed robbery as previously defined is a felony[.]

Counsel did not object to this instruction and confirmed later that it was what was agreed to at the charge conference.

(b) Because Harris did not object to the jury instructions below, they are reviewed only for plain error. See OCGA § 17-8-58 (b). To establish plain error, Harris must show that (1) the alleged error

8

was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which ordinarily means showing that it affected the outcome of the trial. See *Moore v. State*, 315 Ga. 263, 272-273 (4) (882 SE2d 227) (2022). If those three requirements are satisfied, the appellate court has the discretion to remedy the error only if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. at 273 (4) (citation and punctuation omitted).

Assuming that Harris did not affirmatively waive his claim of plain error, the claim still fails because Harris has not shown that the trial court's jury instruction was wrong beyond reasonable dispute. A strong indication the instruction was not clearly wrong is that it was a correct statement of the law. The Code section dealing with the defense of justification provides: "A person is not justified in using force . . . if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony." OCGA § 16-3-21 (b) (2). The pattern jury instruction on self-defense

— which the court and the parties consulted during the charge conference — tracks the statute. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.10.10 (4th ed. 2007, updated 2023). And the trial court instructed the jury just so, except that it omitted the part about fleeing from a felony, because there was no suggestion that Harris was fleeing after committing another felony when he shot Spruill. A jury instruction that correctly states the law and that conforms to the evidence, as the instruction here did, generally will not be clearly erroneous. See, e.g., *Priester v. State*, 317 Ga. 477, 486 (4) (b) (i) (893 SE2d 751) (2023) ("A requested jury instruction must be adjusted to the evidence[.]") (citation and punctuation omitted); *Williams v. State*, 297 Ga. 460, 465 (3) (773 SE2d 213) (2015) (jury instruction that tracked the pattern instructions and was approved by appellate courts was not clearly or obviously erroneous); *Givens v. State*, 294 Ga. 264, 268 (3) (751 SE2d 778) (2013) (jury instruction was not clear and obvious error when it "was a correct statement of the law inasmuch as it set[ ] forth verbatim" the applicable statutory language).

Nevertheless, Harris argues that the court's instruction was obviously wrong. In his view, the instruction could have caused the jury to believe, wrongly, that committing a felony would disqualify him from claiming self-defense *even if* the felony was the very one he claimed was justified. Harris relies for this argument on a footnote in our recent opinion in *Taylor v. State*, 316 Ga. 17, 21 (2) n.4 (885 SE2d 787) (2023), in which we suggested that the trial court's instruction on the disqualifying-felony rule of OCGA § 16-3-21 (b) (2) could have misled the jury.

But the instruction in *Taylor* was different than the one here. In *Taylor*, the defendant was charged with felony murder predicated on aggravated assault for his role in a drive-by shooting, and he claimed self-defense. See *Taylor*, 316 Ga. at 18 (1). The trial court's charge to the jury included the following instruction: "A person is not justified in using force if that person . . . is attempting to commit, is committing or is fleeing after the commission or attempted commission of a felony. And in this case, the arguable felony has

11

been alleged to be aggravated assault." See id. at 19 (1). The potential problem was that aggravated assault was identified as the felony that could disqualify Taylor from claiming self-defense under OCGA § 16-3-21 (b) (2), even though the aggravated assault — the shooting — was the very act that Taylor claimed was self-defense. Thus, we noted that the instruction could have misled the jury, as it "could have been understood as requiring the jury to reject justification as a defense if the jury found that the State proved [the] elements of aggravated assault — even though [the defendant] was raising justification as a defense *to the aggravated assault charge* itself." Id. at 21 (2) n.4 (emphasis in original). And that reading would be wrong, because "the State does not prove that the defendant's conduct was not justified merely by proving the elements of the charged offense." Id.

By contrast, the instructions here cannot be understood to identify the shooting itself as the felony that could preclude Harris's justification defense. Immediately after telling the jury that Harris could not claim self-defense if he was committing a felony, the court

12

said, "Criminal attempt to commit armed robbery as previously defined is a felony." The court thus identified attempted armed robbery, *not* the shooting of Spruill, as the felony that could disqualify Harris from claiming self-defense. That makes this case different from *Taylor*, and a lot more like *State v. Brown*, 314 Ga. 588 (878 SE2d 445) (2022), which we cited in *Taylor* as an example of how OCGA § 16-3-21 (b) (2) is supposed to work. In *Brown*, the defendant claimed self-defense to the charge of shooting and killing someone during a card game, but he could have been precluded from relying on that defense if he "was in [the] process of committing [a] *different* felony — robbing other players in the card game — when gunfire broke out." *Taylor*, 316 Ga. at 21 (2) n.4 (emphasis in original). So too here. The court told the jury that Harris could not claim self-defense if, when he shot Spruill, he was attempting to commit armed robbery — a "*different* felony" than the one he claimed was justified, which was the shooting itself. See id.

Harris points out that the trial court did not specify that the jury should *not* apply the disqualifying-felony rule of OCGA § 16-3-

21 (b) (2) if it merely found that the shooting of Spruill met the elements of aggravated assault or felony murder. But the court named only attempted armed robbery in that portion of its instructions, and the State's theory of the case — which it reiterated in its closing argument — was that Harris, Blue, and Boss were trying to rob Spruill because they knew he had gotten some money from selling the TVs. Given that emphasis on armed robbery, misleading the jury simply was not a concern in the same way we suggested it could be in *Taylor*.

In sum, the jury instructions correctly stated the law and tracked the pattern jury instructions. The issue we identified in *Taylor* is not present in this case, and Harris has not cited any other authority supporting his contention that the court should have given a different instruction. His claim of plain error therefore fails. See *Taylor v. State*, 306 Ga. 277, 286 (3) (b) (830 SE2d 90) (2019) (trial court did not clearly err in failing to give more detailed jury instruction when appellant cited no precedent requiring it).

3. Harris also contends that the trial court plainly erred by

placing too much emphasis on the use of deadly force when instructing the jury on self-defense. He argues that as a result, the jury may not have understood that self-defense can be a defense to any felony. But that argument is simply not supported by the record. The trial court explained to the jury the circumstances when a person can be justified in using force, and then it separately explained when a person can be justified in using deadly force. The court's instructions tracked both the affirmative-defense statute and the applicable pattern jury instruction. See OCGA § 16-3-21 (a); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.10.10 (4th ed. 2007, updated 2023). We see no error, let alone plain error, so this claim fails. See *Williams*, 297 Ga. at 465 (3); *Givens*, 294 Ga. at 268 (3).

*Judgment affirmed. All the Justices concur.*

Decided October 15, 2024.

Murder. Fulton Superior Court. Before Judge Dunaway.

*Stephen R. Scarborough*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Jayna Edwards, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Ashleigh D. Headrick, Craig J. Pake, Assistant Attorneys General*, for appellee.