In the Supreme Court of Georgia

Decided: February 8, 2016

S15A1912. ROBINSON v. THE STATE.

MELTON, Justice.

Following a jury trial, Anthony Threatt Robinson appeals his convictions for felony murder predicated on criminal attempt to commit armed robbery, fleeing and attempting to elude a police officer, obstruction of a police officer, and making false statements. Robinson contends that the evidence was insufficient to support the verdicts, that the trial court made numerous errors regarding evidence and jury instructions, and that trial counsel rendered ineffective assistance.[1] For the reasons set forth below, we affirm.

---

[1] Following a mistrial, Robinson was re-tried on the following indicted charges from a May 22, 2013 indictment: felony murder predicated on the crime of attempt to commit armed robbery; criminal attempt to commit armed robbery; fleeing and attempting to elude a police officer; obstruction of a police officer; and making false statements. In addition, Robinson was charged as a recidivist based on three prior convictions. Two charges regarding firearm possession were bifurcated and, ultimately, nolle prossed. The jury found Robinson to be guilty of all charges. On February 20, 2014, Robinson was ultimately sentenced as a recidivist to life without parole for felony murder, five consecutive years for fleeing and attempting to elude a police officer, one concurrent year for

1. Viewed in the light most favorable to the verdict, the record shows that Robinson and Benjamin Carter had been close friends for many years. On September 25, 2012, an individual, later identified as Carter from surveillance footage, entered the Coastal Gold Exchange (CGE), a business that bought precious metals. Carter pulled a gun on a CGE employee, Jimmie Skelton, and stole approximately $2,000. No one was ever arrested for this robbery, but there was evidence that Robinson and Carter used their cell phones in the vicinity of CGE around the time that the robbery occurred. In addition, on September 27, 2012, Dionne Polite-Brown, an acquaintance of Robinson and Carter, heard Robinson tell Carter and others that he and Carter had a "good lick" or a "sweet lick," apparently a reference to the September 25th robbery.[2]

On the morning of September 27, 2012, Robinson told Antwan Williams, the mother of one of his children, that he was going to procure money for their

---

obstruction of an officer, and five concurrent years for making false statements. On March 6, 2014, Robinson filed a motion for new trial, and amended it on July 25, 2014 and September 23, 2014. The trial court denied the motion on April 29, 2015. Thereafter, Robinson filed a timely notice of appeal, and his case, submitted on the briefs, was docketed to the September 2015 Term of this Court.

[2] Testimony indicated that "lick" is a euphemism for a robbery.

son. Later that day, Carter and Robinson picked up Jessica Hamilton, the mother of Carter's child, in a black truck. Hamilton heard Robinson tell Carter he needed to get money for his son's mother. After dropping Hamilton off, Carter went to the home of Nicole Owens, who testified that Carter was flustered and wearing a pistol on his side.

On the afternoon of September 27, 2012, Carter entered CGE while Timothy Johnson, the owner of the business, was working alone. Following the robbery that had occurred two days earlier, Johnson reviewed security footage from the store and studied the features and image of the robber. As a result, Johnson became suspicious when Carter walked into the store. Johnson warned Carter that he knew who he was, and Johnson placed his hand on a gun that he was carrying.

Carter then fled the business, and Johnson pursued. Carter ran behind the shopping center where CGE was located. Johnson testified that, as Carter was fleeing, Carter kept turning and looking back at him. At that time, Johnson noticed that Carter had a gun on his side. Johnson testified that he felt his life was in danger. Based on this belief, Johnson drew his gun and shot Carter in the back. Wounded but still mobile, Carter jumped into the black truck that

Robinson had parked in an alley near CGE. Robinson drove the truck away, and Johnson reported the events to a 911 operator. In the area where Carter had fled, Johnson found a loaded gun lying in the grass. Polite-Brown testified that she had previously seen Robinson with the same gun.

Shortly after the robbery, police in marked vehicles began pursuit of the truck driven by Robinson. Robinson, however, attempted to elude police and started running stop signs. Eventually, Robinson crashed the truck into a house, exited the vehicle, and ran down the street until he was apprehended. Robinson did not immediately inform police that Carter was still in the truck and needed medical assistance. Carter later died of a gunshot wound to the back.

This evidence was sufficient to enable the jury to find Robinson guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Nonetheless, Robinson contends that there was insufficient evidence to prove that (a) he was a party to the crime of attempted robbery and (b) his actions were a proximate cause of Carter's death. We cannot agree.

Pursuant to OCGA § 16–2–20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be . . . convicted of

4

commission of the crime." Robinson argues that the State presented only circumstantial evidence that did not exclude every other reasonable hypothesis except that of his guilt as a party to the crime, as required by OCGA § 24–14–6.[3] "[Q]uestions as to the reasonableness of hypotheses other than the guilt of the defendant are generally for the jury to decide, and this Court will not disturb a finding of guilt unless the evidence is insupportable as a matter of law." (Citation omitted.) Lowe v. State, 295 Ga. 623, 625 (1) (759 SE2d 841) (2014). Furthermore, this Court will not resolve evidentiary conflicts and inconsistencies. See Flowers v. State, 275 Ga. 592 (1) (571 SE2d 381) (2002). Mere presence at the scene of the crime and mere approval of a criminal act are insufficient to establish that a defendant was a party to the crime. "Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary." (Citation omitted.) Eckman v. State, 274 Ga. 63, 65 (1) (548 SE2d 310) (2001). But such shared criminal intent "may be inferred from the

---

[3] Effective January 1, 2013, OCGA § 24–14–6 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." This language tracks the language of OCGA § 24–4–6 in our old evidence code.

5

defendant's conduct before, during, and after the crime." (Citation omitted.) Id.

The record in this case shows that Robinson: (1) stated a desire and intention to procure money for one of his children; (2) drove Carter to the vicinity of CGE; (3) parked in a nearby alley prior to the robbery and waited for Carter to return; (4) drove Carter away from the scene, thereby fulfilling the role of a getaway driver; (5) fled erratically from police, running stop signs and crashing the truck into a home; (6) failed to tell police that Carter had been shot and remained in the truck; and (7) misled police about his close relationship with Carter. Furthermore, the evidence revealed that Robinson had previously been seen with the gun that Carter dropped on the ground after the September 27th attempted armed robbery. Based on these facts, the jury was presented with sufficient evidence to find Robinson guilty as a party to the crime of attempted robbery. See, e.g., Wise v. State, 325 Ga. App. 377 (1) (752 SE2d 628) (2013).

Robinson also maintains that his felony murder conviction must be reversed because the evidence was insufficient to show that his acts were a proximate cause of Carter's death.

> When construing Georgia's felony murder statute, this Court has held that causing the death of another human being means proximate causation. State v. Jackson, 287 Ga. 646 (2) (697 SE2d

6

757) (2010). "Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause." Id. at 654. We consider the elements of the felony not in the abstract, but in the actual circumstances in which the felony was committed. Davis v. State, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012).

(Footnote and emphasis omitted.) Currier v. State, 294 Ga. 392, 394 (1) (754 SE2d 17) (2014). Furthermore, "[w]hat constitutes proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent." (Citation and punctuation omitted.) McGrath v. State, 277 Ga. App. 825, 829 (627 SE2d 866) (2006).

Proximate cause exists if Robinson's crime of attempted armed robbery

"directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or if . . . the homicide [was] committed within the res gestae of the felony . . . and is one of the incidental, probable consequences of the execution of the design to commit the [predicate felony]." (Citations and punctuation omitted) State v. Jackson, [supra,] 287 Ga. at 652 (2). "The only limitation on the type of felony that may serve as an underlying felony for a felony murder conviction is that the felony must be inherently dangerous to human life." Hulme v. State, 273 Ga. 676, 678 (1) ( 544 SE2d 138) (2001). That is, the felony must be dangerous per se or by its circumstances create a foreseeable risk of death. Id.

Davis v. State, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012).

7

Here, it was reasonable to foresee that Carter, who was attempting an armed robbery, could be fatally wounded in attempting such a highly dangerous enterprise. As Robinson was a party to the crime of attempted armed robbery, his acts, therefore, were properly found to be a proximate cause of Carter's death, which flowed directly from the dangerous criminal enterprise. Id.

2. Robinson contends that the trial court erred by giving its own instruction on proximate cause to the jury rather than the exact text of the one that he requested, contending that his own instruction would have been "easier for the jury to understand." As Robinson concedes, however, the trial court's instruction was based directly on the language of State v. Jackson, supra. As the trial court's instruction was legally correct, there is no error. Id.

3. Robinson contends that the trial court erred by denying a motion for a mistrial he made during Johnson's testimony about the September 27th robbery. We disagree.

The record shows that, at the start of the earlier robbery on September 25th, the robber approached Skelton, the clerk on duty, and, according to Skelton, the robber asked what kind of gold CGE sold. It further appears that, during the attempted robbery on September 27th, Carter approached Johnson and

8

asked the same thing. At the time of Robinson's second trial, however, Skelton was not available to testify, and the trial court ruled that the statement made to Skelton was inadmissible hearsay.[4] During Johnson's testimony at trial, the State asked him a number of questions to determine why he became immediately suspicious of Carter when he walked into CGE. At one point, the State asked Johnson, "Without comparing, just say what it is that . . . convinced you that it was the same person?" Johnson responded, "The way that the person walked up to the desk that I was sitting at and then the words that [came] out of his mouth." At this point, Robinson moved for a mistrial, arguing that the prosecutor had committed prosecutorial misconduct by knowingly eliciting a reference to inadmissible hearsay. After hearing argument, the trial court found that the State's question posed to Johnson was general, that the State did not

---

[4] In a response to a motion on limine made by the defense, the trial court ruled before trial that Johnson:

> is not going to be permitted to identify Benjamin Carter as Benjamin Carter in the video from the 25th. He can testify with regard to how he reached the conclusion on the 27th that the individual that came in on the 27th was the same individual that came in on the 25th, and he can explain the basis of his impression. In other words, he can say, here's what I saw on the 25th and here's why I thought it was the same guy on the 27th.

9

intentionally ask for inadmissable testimony, and that there could be no harm because the statement that had been made to Skelton was never placed into evidence. Robinson's trial counsel then stated that he understood the trial court's ruling, but reiterated that the ground for his motion for mistrial was prosecutorial misconduct. Contemporaneously, the trial court offered to give a curative instruction that would advise the jury to disregard Johnson's unresponsive statement concerning anything that Carter might have said. Robinson declined this offer, arguing that the "bell had been rung" and that a mistrial was the only possible solution.

On appeal, Robinson now contends that Johnson's testimony introduced bad character evidence into trial. As an initial matter, this was not the basis for the motion during trial. As such, this new ground, articulated for the first time after trial, has been waived. See, e.g., Crawford v. State, 267 Ga. 543 (6) (480 SE2d 573) (1997). Even if preserved, however, Robinson's argument fails. "Whether to grant a mistrial based on improper character evidence is within the discretion of the trial court. [Cit.] We have held that curative instructions are an adequate remedy when a witness inadvertently refers to a defendant's prior convictions or criminal acts. [Cit.]" Bunnell v. State, 292 Ga. 253, 257 (4) (735

SE2d 281) (2013). Robinson, himself, declined such a curative instruction. Moreover, as discussed above, the inadmissible testimony about which Robinson complains only alludes to a hearsay statement about an accomplice that was never admitted into evidence. There was no error.

4. Robinson argues that the trial court erred by denying his motion for a mistrial based on his contention that the State introduced improper evidence to link him to the robbery conducted on September 25th through the testimony of Polite-Brown. Again, we disagree.

The transcript shows that, during her testimony, Polite-Brown stated that she heard Robinson tell Carter that something "had been a good lick." Robinson now contends that this was inappropriate character evidence linking him to the earlier robbery on September 25th and that the State failed to provide him with proper notice of this evidence pursuant to OCGA § 24-4-404 (b). The record shows, and the trial court's ruling reflects, however, that Robinson did not raise this argument as the actual basis for his mistrial motion. Instead, Robinson contended both in court and in a written supplement that the State elicited the testimony from Polite-Brown as part of a scheme to link him to a wholly unrelated robbery in Florida. Based on extensive argument and evidence from

11

Robinson's earlier mistrial, as well as the evidence presented at the second trial, the trial court determined that the testimony in question did not refer to the unrelated robbery in Florida. Accordingly, the trial court further determined that, contrary to Robinson's argument, the State was not attempting to introduce this unrelated robbery into evidence.[5]

Robinson, therefore, has waived his right to argue this ground on appeal, and, in any event, the trial court did not abuse its discretion in denying the motion for a mistrial. See, e. g., Sanchez v. State, 285 Ga. 749, 751 (3) (684 SE2d 251) (2009) ("In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground.") (Citation and punctuation omitted.).

5. Robinson maintains that the trial court erred by charging the jury regarding self-defense, as that doctrine related to Johnson's shooting of Carter. We disagree.

---

[5] Colloquy between the trial court and counsel reveals that Polite-Brown's testimony was admitted at Robinson's previous trial and discussed extensively there. The testimony was not new.

Robinson did not object at trial to this instruction; therefore, this Court may only review the giving of this instruction for "plain error which affects [Robinson's] substantial rights." (Citations omitted.) Woodward v. State, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015); see also State v. Kelly, 290 Ga. 29, 33 (718 SE2d 232) (2011). The record shows that Robinson, himself, originally requested a charge on self-defense, but subsequently withdrew the request. After considering the nature of the facts, however, the trial court gave a charge modeled after the Suggested Pattern Jury Instructions for Criminal Cases, § 3.10.12, but tailored to address Johnson's shooting of Carter.

Robinson first contends that this instruction was erroneous because it did not inform the jury that the State had the burden to prove that Johnson did not act in self-defense with regard to the death of Carter. To support this contention, Robinson cites a number of cases in which the *defendant* on trial claimed self-defense. That is not the situation in this case, however. Johnson was not being prosecuted by the State, and it would have been inaccurate to charge the jury that the State had any burden of proof against Johnson, who was only a witness at trial. Second, Robinson contends that the charge should not have included

13

language regarding the use of self-defense to prevent a forcible felony.[6] Specifically, Robinson argues that Carter's felony of attempted armed robbery was completed the moment that he walked into CGE and that, by the time that Carter was shot, there was no longer any forcible felony to prevent. Contrary to Robinson's arguments, the attempted armed robbery was an ongoing event at the time Johnson shot Carter; at that moment, though Carter's plans had been modified, Carter had not even reached the get-away car. Finally, Robinson argues that the self-defense instruction confused the jury by stating that "[a] person is justified in threatening or using force against another person when, and to the extent that, he reasonably believes that such threat or force is necessary

---

[6] In relevant part, the trial court charged the jury:

The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. A person is justified in threatening or using force against another person when, and to the extent that, he reasonably believes that such threat or force is necessary to defend himself against the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself or to prevent the commission of a forcible felony. A forcible felony is any felony that involves the use or threat of physical force or violence against any person. Criminal attempt to commit armed robbery is a felony as previously defined.

14

to defend himself against the other's imminent use of unlawful force." Robinson

argues that the instruction could have led jurors to believe that the issue was

what Johnson, from Johnson's subjective point of view, reasonably believed

would justify deadly force, rather than whether a reasonable person would have

thought the circumstances made self-defense necessary. Viewing the charge as

a whole, however, the jury was instructed that "the standard is whether the

circumstances were such that they would excite the fears of a reasonable

person."[7] Therefore, as a whole, the instructions were proper, and no error, plain

or otherwise, has been shown. See, e.g., Stewart v. State, 262 Ga. App. 426 (2)

(585 SE2d 622) (2003) (finding no error when the charge given did not include

the reasonable person standard because the charge as a whole encompassed the

---

[7] In relevant part, the trial court charged the jury:
In applying the law of self-defense, a[n individual] is justified to kill another person in defense of self or others. The standard is whether the circumstances were such that they would excite the fears of a reasonable person. For the killing to be justified under the law, the accused must truly have acted under the influence of these fears and not in a spirit of revenge.
Although the pattern charge includes the option of a parenthetical phrase after "would excite" that states "(not merely the fears of the defendant but)", the trial court chose not to include this language.

elements of self-defense under OCGA § 16-3-21(a)).

7. Robinson contends that his trial counsel rendered ineffective assistance by failing to object to (1) the testimony of two different witnesses regarding the identification of Carter as the person depicted in still photographs taken from the surveillance footage of the September 25th robbery and (2) the State's contention in its opening statement that witnesses would identify the individual in the surveillance footage of the September 25th robbery as Carter.

> In order to succeed on his claim of ineffective assistance, [Robinson] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

The record shows that Owens and Hamilton, who both knew Carter well, identified Carter in the surveillance footage of the September 25th robbery. Trial

16

counsel made the reasonable strategic decision not to object to the testimony in order to avoid focus on whether Carter was involved in the September 25th robbery of CGE, because there was no direct evidence that Robinson was actually involved in that robbery. Likewise, trial counsel made a strategic decision not to object during the opening statement because: (1) he generally does not object to opening statements which are not evidence, and the jury is generally instructed on this point; and (2) part of his general trial strategy was to allow the State to "lock in" on certain evidence as much as possible during opening statements that he did not believe the State could prove so that he could argue the State failed to prove this evidence later. "Whether to object to the content of an opening statement is a tactical decision," and trial counsel's "reasonable tactical decision" not to object during opening statements does not generally qualify as deficient performance. Phillips v. State, 285 Ga. 213, 219 (5) (a) (675 SE2d 1) (2009). It did not qualify as deficient performance in this case. Trial counsel's strategy with respect to all of the aforementioned matters was not unreasonable.

Judgment affirmed. All the Justices concur.

17