320 Ga. 653
FINAL COPY

S24A0882. HOLLOWAY v. THE STATE.

ELLINGTON, Justice.

Malcolm Holloway appeals his convictions for felony murder and related crimes arising from the fatal shooting of Javontay Carr during the attempted armed robbery of Harshvadan, Sumitra, and Kumar Patel on June 27, 2018.[1] For the reasons explained below, we

[1] On October 3, 2018, a Troup County grand jury indicted Holloway, Anthony O'Neal, Anthony Morris, Christopher Jacobs, and Sellus Colvin with felony murder predicated on aggravated assault with intent to rob, criminal attempt to commit armed robbery, and conspiracy to commit armed robbery; and four counts of possession of a firearm during the commission of a felony predicated on the foregoing felonies. The grand jury indicted O'Neal, Morris, Jacobs, Colvin, and Pamela Barker on additional charges. O'Neal, Morris, Jacobs, Colvin, and Barker entered plea agreements conditioned on their truthful testimony at Holloway's jury trial, which occurred in July and August 2019. The jury found Holloway guilty on all counts. The trial court sentenced Holloway to life in prison with the possibility of parole for felony murder and to five years in prison for each count of possession of a firearm during the commission of a felony, with each sentence to be served consecutively. The trial court merged the counts of criminal attempt to commit armed robbery, conspiracy to commit armed robbery, and aggravated assault with intent to rob with the felony murder count. See, e.g., *Stewart v. State*, 311 Ga. 471, 477 (2) (858 SE2d 456) (2021). Holloway timely filed a motion for new trial, which he amended. Following a hearing, the trial court denied Holloway's amended motion for new trial in February 2023. Holloway timely filed a notice of appeal, which he amended once. Holloway's appeal was docketed to this Court's August 2024 term and submitted for a decision on the briefs.

affirm.

1. Viewed in a light most favorable to the verdicts, the evidence presented at trial showed the following. Holloway, who lived in LaGrange, knew Christopher Jacobs and Anthony O'Neal, who lived in Columbus, Mississippi. According to Jacobs, Holloway invited O'Neal and Jacobs, along with Anthony Morris, Sellus Colvin, and Carr — who were also from Mississippi — to LaGrange. Holloway suggested they rob the Patels, who owned a gas station and check-cashing business, because Holloway believed that the Patels might have a large amount of cash on their persons.

On June 27, 2018, O'Neal, Morris, Jacobs, Colvin, and Carr drove from Columbus, Mississippi to LaGrange in a car that belonged to O'Neal's girlfriend, Pamela Barker. When they arrived in LaGrange, they met Holloway and went to a park, where they planned the robbery. They determined that they would ambush the Patels on a roadside between the Patels' gas station and the Patels' house. Carr would pretend to change a tire on the roadside to lure the Patels into stopping their car while Colvin, Morris, Jacobs, and

2

O'Neal hid in the woods beside the road to ambush the Patels once they stopped their car. Holloway would position himself as a lookout at a different location to alert the others when the Patels were approaching. They agreed that they would rob the Patels but not shoot at them. Holloway gave Morris an AK-47 and Colvin a 9mm handgun to carry during the robbery. After leaving the park, they went to a LaGrange motel, where surveillance video showed Holloway renting a room for Morris, O'Neal, Carr, Jacobs, and Colvin.

Holloway, Morris, Carr, and Colvin left the hotel briefly and drove to Alabama with the intention of committing a different robbery there. After failing to execute that plan, they returned to the hotel room. Cell phone data showed Holloway's cell phone in Alabama at 9:36 p.m. and back in LaGrange an hour later. Over that period, Holloway's cell phone data also showed regular communication with the phone number associated with Jacobs, who stayed in the hotel room with O'Neal while the others went to Alabama.

3

Around 11:00 that evening, the group moved into their positions to rob the Patels. Carr, Morris, Colvin, Jacobs, and O'Neal positioned themselves on a roadside between the Patels' gas station and their home. Carr pretended to change a tire on the roadside. O'Neal, Morris, Jacobs, and Colvin hid in the nearby woods. Holloway positioned himself nearby as the lookout. However, during this time, Holloway continued communicating with Carr, who was using Jacobs's cell phone.

The Patels left their gas station at 11:40 p.m. As they approached the robbery location, they saw a car on the roadside with its emergency lights flashing and a man appearing to change a flat tire. Kumar slowed his car down to determine if the driver needed help. The Patels then saw a man come out of the woods, lifting a gun.

Carr ran between Morris and the Patels' vehicle and began shooting at the Patels. As Carr did so, he handed Jacobs's phone to O'Neal, with Holloway still on the line. Morris testified that he mistakenly thought the Patels were shooting, so he began shooting

4

at the Patels, but missed and accidentally shot Carr. Realizing they were about to be robbed, the Patels sped away while bullets shattered their car windows.

During the attempted robbery, Carr, Jacobs, and O'Neal communicated via cell phone with Holloway. Between 11:34 p.m. and 11:46 p.m., Holloway's phone data showed at least three calls initiated between Jacobs's and Holloway's cell phones. According to O'Neal, when Holloway heard the shooting through the phone, he asked O'Neal "what they were shooting for."

Holloway did not testify at trial. However, O'Neal, Morris, Colvin, Jacobs, and Barker testified for the State, explaining that their plea agreements were conditioned on truthful trial testimony.

2. Holloway contends that the evidence was insufficient as a matter of constitutional due process to authorize his conviction for felony murder predicated on attempt to commit armed robbery, conspiracy to commit armed robbery, and aggravated assault with intent to rob. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We disagree.

5

"Under *Jackson v. Virginia*, we evaluate the sufficiency of evidence as a matter of federal due process under the Fourteenth Amendment to the United States Constitution by determining whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Golden v. State*, 310 Ga. 538, 540 (1) (852 SE2d 524) (2020). "This limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Muse v. State*, 316 Ga. 639, 647 (2) (889 SE2d 885) (2023) (citation and punctuation omitted).

It is well established that "'[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.'" *Milton v. State*, 318 Ga. 737, 742 (2) (900 SE2d 590) (2024) (quoting OCGA § 16-2-20 (a)). To secure a conviction for a person under a party-to-a-crime theory, the State must show "that he intentionally aided or abetted in the commission of the crimes or intentionally advised, encouraged, counseled, or procured someone else to commit the crimes." *Frazier*

6

*v. State*, 308 Ga. 450, 453 (2) (a) (841 SE2d 692) (2020). Additionally, "[c]onviction as a party to a crime requires proof of a common criminal intent, which the jury may infer from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes." *Clark v. State*, 315 Ga. 423, 427 (2) (883 SE2d 317) (2023).

Holloway contends that the evidence was insufficient to convict him of felony murder because he and the others did not plan to fire guns during the robbery, and therefore Holloway — who was not at the crime scene — could not reasonably foresee and was not the proximate cause of Carr's death. This argument fails.

"A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). See also *Martin v. State*, 310 Ga. 658, 660-661 (1) (852 SE2d 834) (2020). As we have explained, the State must meet certain requirements to convict a defendant of felony murder, and Holloway's sufficiency contentions relate to two of those requirements:

First, the predicate felony . . . must be one from which it was reasonably foreseeable that death could result. We have described this as a requirement that the predicate felony was "inherently dangerous [to human life]." Second, the death must have been the probable or natural consequence of the defendant's conduct, a concept known as "proximate cause."

*Eubanks v. State*, 317 Ga. 563, 568 (2) (a) (894 SE2d 27) (2023).[2]

"The first requirement — that a felony must be 'inherently dangerous to human life' — is a 'limitation on the type of felony that may serve as an underlying felony for a felony murder conviction.'" Id. at 568 (2) (a) (i). The proximate-cause — or "legal cause" — requirement "requires that the death actually happened in a way that was a reasonably foreseeable result of the criminal conduct[.]" *Melancon v. State*, 319 Ga. 741, 750 (2) (b) (906 SE2d 725) (2024) (citation, punctuation and emphasis omitted).

Considering first whether the felonies were inherently dangerous, we have explained that the predicate felonies underlying

---

[2] *Eubanks* also identifies a third requirement that the State must establish to convict a defendant of felony murder. See *Eubanks*, 317 Ga. at 568 (2) (a) ("Third, in keeping with the statutory language, the death must have been caused 'in the commission of' the predicate felony."). However, Holloway advances no argument related to that requirement.

Holloway's felony murder conviction — aggravated assault with intent to rob, criminal attempt to commit armed robbery, and conspiracy to commit armed robbery — are inherently dangerous to human life. See, e.g., *Sanders v. State*, 313 Ga. 191, 198 (3) (a) (iv) (869 SE2d 411) (2022) ("Aggravated assault has been recognized by this Court as an inherently dangerous felony. . . . [A] conspiracy to commit an inherently dangerous felony[ ] . . . would also be inherently dangerous."); *Martin*, 310 Ga. at 661 (1) (explaining that "it was not an unforeseeable collateral consequence that someone might get shot during the commission of" an armed robbery); *Lofton v. State*, 309 Ga. 349, 353 (1) (846 SE2d 57) (2020) ("[A] shooting is a reasonably foreseeable consequence of an armed robbery and thus a party to an armed robbery is culpable for felony murder if a fatal shooting occurs."); *Robinson v. State*, 298 Ga. 455, 457-459 (1) (782 SE2d 657) (2016) (holding that the fatal shooting of the defendant's accomplice by the victim during an attempted armed robbery was foreseeable). Moreover, the circumstances under which these predicate felonies were committed — an armed ambush on a dark

9

roadside late at night — leave us with little doubt that the evidence supported the jury's determination that they created a foreseeable risk of death. See *Eubanks*, 317 Ga. at 573 (2) (b) (i) (explaining that the "inherently dangerous" "requirement is addressed by assessing the risks created by the actual circumstances in which the felony was committed"); *Robinson*, 298 Ga. at 458-459 (1) (explaining that it was reasonable to foresee that the victim, "who was attempting an armed robbery, could be fatally wounded in attempting such a highly dangerous enterprise").

Turning to the proximate cause requirement, the evidence established that the shooting "actually happened in a way that was a reasonably foreseeable result" of the predicate felonies. *Eubanks*, 317 Ga. at 569 (2) (a) (ii) (explaining that the proximate cause requirement for felony murder predicated on armed robbery is satisfied when the "victim [is] in fact shot and killed by the defendant in the course of the robbery . . . because one could reasonably foresee that a death could be caused by an armed robbery in just that way") (emphasis omitted). Indeed, the risk that someone

10

would die during the armed ambush materialized when Morris shot Carr. Therefore, the evidence supported the jury's conclusion that the commission of the predicate felonies — aggravated assault with intent to rob, criminal attempt to commit armed robbery, and conspiracy to commit armed robbery — proximately caused Carr's death.

Moreover, the shooting was not, as Holloway contends, an unforeseeable collateral consequence of the conspiracy. We have explained

> that all of the participants in a conspiracy are criminally responsible for the acts of each, committed in the execution of the conspiracy, and which may be said to be a probable consequence of the conspiracy, even though the particular act may not actually have been part of the plan. This criminal responsibility also applies to collateral acts of a co-conspirator, so long as such collateral acts are reasonably foreseeable as a necessary or natural consequence of the conspiracy.

*Martin*, 310 Ga. at 661 (1) (cleaned up). The evidence showed that Holloway conspired to rob the Patels at gunpoint by inviting O'Neal, Jacobs, Carr, Morris, and Colvin to LaGrange to commit a robbery, renting a LaGrange hotel room for them, and giving Morris and

11

Colvin guns to carry during the robbery. Moreover, the evidence showed — and Holloway concedes on appeal — that "Holloway's role [in the predicate felonies] was to alert O'Neal, Morris, Jacobs," and Colvin "regarding the impending arrival of the Patels on the roadway." Therefore, even if Holloway did not specifically intend for Morris to shoot Carr, Holloway (as a participant in the conspiracy) is responsible for the acts of his co-conspirators committed in the execution of the conspiracy to commit armed robbery, including Morris's act of shooting Carr, and so it is as though Holloway shot Carr. See *Martin*, 310 Ga. at 659, 661 (1) (concluding that the evidence was sufficient to convict the appellant of felony murder predicated on aggravated assault because "[i]t was not an unforeseeable collateral consequence [of an armed robbery] that someone might get shot," where the appellant's co-conspirator fired a shot during an armed robbery that killed the robbery target's three-year-old son). Cf. *Robinson*, 298 Ga. at 458-459 (1) ("[I]t was reasonable to foresee that [the accomplice], who was attempting an armed robbery [with the appellant], could be fatally wounded in

attempting such a highly dangerous enterprise. As [the appellant] was a party to the crime of attempted armed robbery, his acts, therefore, were properly found to be a proximate cause of [the accomplice's] death, which flowed directly from the dangerous criminal enterprise.").

Finally, Holloway contends that the evidence was insufficient to authorize his felony murder conviction because he lacked criminal intent to shoot Carr. Felony murder, however, "'does not require intent to kill; rather, the defendant only must have intended to commit the underlying felony.'" *Burley v. State*, 316 Ga. 796, 800 n.2 (888 SE2d 507) (2023) (citation omitted). Here, the evidence showed that Holloway intended to commit the underlying felonies, and so it does not matter that he lacked intent to shoot Carr. Holloway's sufficiency-of-the-evidence claim thus fails.[3]

---

[3] Holloway also contends that the trial court erred in denying his motion for a directed verdict of acquittal as to the felony murder count on the same grounds that he argues the evidence was insufficient to support his felony murder conviction. "The test established in [*Jackson v. Virginia*] is the proper standard . . . for evaluating whether the trial court erred by denying a defendant's motion for a directed verdict of acquittal." *Rooks v. State*, 317 Ga. 743, 750 (2) (893 SE2d 899) (2023). For the reasons explained in Division 2, this claim fails.

3. Holloway contends that the trial court plainly erred in omitting language concerning foreseeability and proximate causation from its jury instruction on conspiracy. We disagree because the trial court adequately instructed the jury on the principles Holloway contends were erroneously omitted.

As an initial matter, Holloway concedes that we should review this claim for plain error because he did not object to the trial court's omission of certain language from its conspiracy instruction at trial. See OCGA § 17-8-58 (b); *Clark*, 315 Ga. at 440 (4).

> To establish plain error, [an appellant] must show that the alleged instructional error was not affirmatively waived; was clear and obvious, rather than subject to reasonable dispute; likely affected the outcome of the trial; and seriously affected the fairness, integrity, or public reputation of judicial proceedings. An appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be.

*Sauder v. State*, 318 Ga. 791, 802-803 (5) (901 SE2d 124) (2024) (citation and punctuation omitted). Moreover, to evaluate whether a trial court plainly erred in failing to give a jury instruction, we "read and consider the instructions as a whole." *Stafford v. State*, 312 Ga.

14

811, 820 (4) (865 SE2d 116) (2021).

Here, the trial court instructed the jury on the charge of conspiracy to commit armed robbery as follows:

> A conspiracy is an agreement between two or more persons to do an unlawful act, and the existence of a conspiracy may be established by proof of acts and conduct as well as by proof of an express agreement. When persons associate themselves in an unlawful enterprise, any act done by any party to the conspiracy to further the unlawful enterprise is considered to be the act of all the conspirators. However, each person is responsible for the acts of others only insofar as such acts are naturally and necessarily done to further the conspiracy. Whether or not a conspiracy exists in this case is a matter for you to determine. Presence, companionship, and conduct before and after the commission of the alleged offense may be considered by you in determining whether or not such circumstances, if any, give rise to an inference of the existence of a conspiracy.
>
> . . .
>
> A person commits armed robbery when, with intent to commit theft, that person takes property of another from the person or the immediate presence of another by use of an offensive weapon or by any replica, article, or device having the appearance of such weapon. An offensive weapon is any object, device, or instrument that, when used offensively against a person, is likely to, or gives the appearance of, being likely to or actually does result in the death or serious bodily injury. The character of a weapon may be established by direct or circumstantial evidence.

15

. . .

[T]he defendant is also charged with conspiracy to commit armed robbery in Count Three of this indictment. A person commits conspiracy to commit armed robbery when that person, together with one or more other persons, conspires to commit an armed robbery, and any one or more of such persons does any overt act to bring about the object of the conspiracy.

Additionally, the trial court instructed the jury that "each person is responsible for the acts of others only insofar as such acts are naturally and necessarily done to further the conspiracy"; "[t]he burden of proof rests upon the State to prove . . . every essential element of the crime charged beyond a reasonable doubt"; and supporting evidence "must be sufficient to connect the accused with a criminal act."

Citing *United States v. Johnson*, 730 F2d 683, 690 (IV) (B) (11th Cir. 1984), Holloway contends that the trial court plainly erred in omitting the following language from the trial court's instruction on conspiracy: "[t]o find Holloway guilty as a co-conspirator, the jury had to find sufficient evidence to conclude that other co-conspirators committed the acts with which he was charged and that such acts

16

were a foreseeable part of the conspiracy." Holloway also argues — citing *Everritt v. State*, 277 Ga. 457, 459 (588 SE2d 691) (2003) — that the trial court plainly erred in omitting from its conspiracy instruction that "a defendant can be held criminally responsible for such collateral acts only if it can be said that they are a natural and probable consequence of the conspiracy."

Holloway's claim fails. To begin, the authority Holloway cites does not require a trial court to instruct the jury using the language Holloway contends was erroneously omitted. And neither case involved a claim that a trial court erroneously omitted a jury instruction. See generally *Johnson*, 730 F2d at 690 (IV) (B); *Everritt*, 277 Ga. at 459. Moreover, the trial court's definitions of armed robbery and conspiracy to commit armed robbery were substantially identical to the relevant parts of the Code sections on conspiracy and armed robbery. See OCGA §§ 16-4-8 ("A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy.");

17

16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."). See *Harris v. State*, 320 Ga. 92, 95-96 (2) (b) (907 SE2d 669) (2024) ("A strong indication the instruction was not clearly wrong is that it was a correct statement of the law."); *Williams v. State*, 304 Ga. 455, 459 (3) (818 SE2d 653) (2018) (explaining that the trial court's jury instruction on character evidence was not plain error where the appellant "point[ed] to no authority for the proposition that the pattern charge [was] inadequate"). Moreover, even assuming (without deciding) that the language Holloway contends was erroneously omitted would be a correct statement of the law, the trial court instructed the jury that "each person is responsible for the acts of others only insofar as such acts are naturally and necessarily done to further the conspiracy"; supporting evidence "must be sufficient to connect the accused with a criminal act"; and "[t]he burden of proof rests upon the State to

18

prove . . . every essential element of the crime charged beyond a reasonable doubt." Therefore, when evaluated in the context of the jury instructions as a whole, the trial court adequately instructed the jury on the principles Holloway contends were erroneously omitted, such that the language Holloway contends should have been charged would have amounted to an "unnecessary, additional instruction." *Payne v. State*, 318 Ga. 249, 257 (4) (897 SE2d 809) (2024) ("Where the jury charge, taken as a whole, sufficiently instructs the jury on a point of law, a trial court does not err in failing to give an 'unnecessary,' 'additional instruction.'"). See also *Sauder*, 318 Ga. at 804 (5) (b) ("[W]hen evaluated in the context of the jury charge as a whole, the trial court's failure to expressly instruct" using this language "was not a clear and obvious error beyond reasonable dispute."). We cannot say that the trial court plainly erred in this respect.

4. In his fourth enumeration of error, Holloway contends that the trial court plainly erred in failing to instruct the jury on the proximate-cause element of felony murder. However, for the reasons

explained below, this claim fails.

As an initial matter, Holloway concedes that we should apply plain-error review because Holloway did not object to the omission of this language at trial. See OCGA § 17-8-58 (b); *Clark*, 315 Ga. at 440 (4).

Pretermitting whether the trial court clearly and obviously erred in failing to instruct the jury on proximate cause, Holloway's plain-error claim fails because he has not carried his burden of showing that the "erroneous instruction actually affected his substantial rights or likely affected the outcome of the trial[.]" *Burley*, 316 Ga. at 805. To begin, the trial court instructed the jury on felony murder in accordance with Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.20 (4th ed. 2007, updated July 2024).[4] And even had the trial court instructed the jury on

---

[4] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.20 (4th ed. 2007, updated July 2024) provides:
> For felony murder, the State must prove that the Defendant:
> 1. caused the death of another person
> 2. by committing a felony.
> . . .
> _____ is a felony, which I will define for you shortly.

proximate cause as Holloway contends it should have, it is unlikely that a rational "juror could have concluded, based on the record presented at trial, that the State had failed to prove that element in this case." *Burley*, 316 Ga. at 807 (citation and punctuation omitted) (concluding that, for such reason, the trial court's clear and obvious error in failing to instruct the jury accurately on the essential elements of felony murder and aggravated assault likely did not affect the trial's outcome). Uncontradicted evidence at trial established that Morris proximately caused Carr's death by shooting him while Morris, Carr, O'Neal, Jacobs, and Colvin attempted to rob the Patels at gunpoint. The evidence also established — and Holloway concedes on appeal — that "Holloway's role was to alert O'Neal, Morris, Jacobs," and Colvin "regarding the impending arrival of the Patels on the roadway." Other evidence at trial showed that Holloway conspired to commit the armed robbery with O'Neal, Morris, Colvin, Jacobs, and Carr and was a party to the crimes underlying the felony murder count: Holloway invited at least some of his co-defendants to rob the Patels; Holloway introduced the idea

21

of robbing the Patels to his co-defendants because he surmised they would have a large amount of cash in their possession due to their check-cashing business; he supplied firearms for Morris and Colvin to carry during the attempted armed robbery; and Holloway and Jacobs shared at least three phone calls in the 12-minute period surrounding the attempted robbery. Based on this evidence, it is unlikely that a rational juror could have concluded, based on the record presented at trial, that the State failed to prove the proximate-cause element of felony murder. *Burley*, 316 Ga. at 805, 806-807 (concluding that clear and obvious error in failing to instruct the jury on intent to kill — an essential element of aggravated assault with "intent to murder" — was not plain error because the appellant did not show that the trial court's failure to instruct on that element affected the outcome of the trial, explaining that "no rational juror could have concluded, based on the record presented at trial, that the State had failed to prove that element in this case" because "overwhelming circumstantial evidence [was] adduced" that the defendant intended to kill the victim).

Moreover, in accordance with the evidence showing that Holloway served as a lookout for the attempted armed robbery but was not at the scene, the trial court instructed the jury that "each person is responsible for the acts of others only insofar as such acts are naturally and necessarily done to further the conspiracy"; "[a] person is a party to a crime only if that person . . . intentionally helps in the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime"; and "[e]very party to a crime may be charged with and convicted of commission of the crime." When viewing the instructions as a whole, any prejudice stemming from the trial court's failure to instruct the jury on proximate cause was minimized by these instructions. Under these circumstances, we cannot say that the trial court's failure to instruct the jury on proximate cause affected the outcome of Holloway's trial. See *Priester v. State*, 316 Ga. 133, 139-140 (3) (886 SE2d 805) (2023) (concluding, "based on the trial court's instructions as a whole and the strong evidence of Appellant's guilt," the challenged instruction did not "likely affect[ ] the outcome of the

23

trial," and the trial court therefore did not plainly err); *Jones v. State*, 302 Ga. 892, 897-898 (3) (810 SE2d 140) (2018) (concluding that any error in the jury instructions was harmless, based on the trial court's instructions as a whole and the very strong evidence of appellant's guilt).

5. Holloway next contends that the trial court plainly erred in failing to instruct the jury on impeachment of a witness by prior conviction. We disagree.

At trial, Morris, O'Neal, Colvin, and Jacobs testified that their plea agreements were conditioned on their truthful testimony at trial. Additionally, Holloway's trial counsel cross-examined O'Neal, Morris, Colvin, and Jacobs on inconsistencies in prior statements they made to the police. Accordingly, the trial court instructed the jury that

> [i]n assessing the credibility of a witness, you may consider any possible motive in testifying if shown. In that regard, you are authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency, or similar matters.

However, Holloway contends that the trial court failed to instruct

24

the jury on the principle of impeachment of a witness by prior conviction, arguing that O'Neal, Jacobs, Colvin, and Morris avoided life sentences due to plea agreements conditioned on their testimony for the State. See OCGA § 24-6-609 (providing for the admission of "[e]vidence that a witness other than an accused has been convicted of a crime" subject to certain limitations "[f]or the purpose of attacking the character for truthfulness of a witness").

As an initial matter, Holloway concedes that we should review this claim for plain error because he did not request the instruction at trial. See, e.g., *Wilkerson v. State*, 317 Ga. 242, 246-247 (892 SE2d 737) (2023) (explaining that "we review [an appellant's] claim for plain error only" where "the trial court did not charge on voluntary manslaughter, and Appellant did not object to the court's failure to do so").

Assuming (without deciding) that the trial court clearly and obviously erred in failing to instruct the jury on impeachment of a witness by prior conviction, Holloway has not shown that the omission of the instruction affected the trial's outcome. See *Burley*,

25

316 Ga. at 805 ("[W]hen an appellant fails to carry his burden of showing that such an erroneous instruction actually affected his substantial rights or likely affected the outcome of the trial, the error does not constitute plain error."); *Williams v. State*, 308 Ga. 228, 232-233 (2) (838 SE2d 764) (2020). Here, Holloway's trial counsel cross-examined O'Neal, Morris, Colvin, and Jacobs on inconsistencies in prior statements they made to the police. And the instructions as a whole show that the trial court did instruct the jury that it could evaluate the credibility of Morris, O'Neal, Jacobs, and Colvin in the light of the fact that they were testifying in exchange for plea agreements, charging the jury that it "may consider any possible motive" of a witness for testifying, including negotiated pleas or similar matters. Under these circumstances, it is unlikely that the trial court's failure to instruct on impeachment of a witness by prior conviction affected the outcome of Holloway's trial and therefore his substantial rights. Cf. *Clark v. State*, 309 Ga. 566, 571-572 (2) (847 SE2d 160) (2020) (concluding that trial counsel's failure to request a jury instruction on impeachment by prior conviction

likely did not affect the outcome of the trial, where witness for the State was cross-examined about his role in murdering victim and his conviction for the same, and the trial court instructed the jury that "'[i]n assessing the credibility of a witness, you may consider any possible motive in testifying, if shown'" and it is "'authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency, or similar matters'"); *Green v. State*, 304 Ga. 385, 392-393 (2) (b) (818 SE2d 535) (2018) (holding that the appellant was not prejudiced by trial counsel's failure to request an instruction on impeachment by felony conviction where defense counsel cross-examined witness on inconsistencies in his testimony and the trial court "instructed the jury on impeachment generally[;] . . . impeachment specifically by disproving the facts to which the witness testified or proof of prior contradictory statements"; and that, "in determining the believability of witnesses, it 'may also consider (the witness's) personal credibility insofar as it may have been shown in your presence and by the evidence'"). This plain-error

claim therefore fails.[5]

6. Lastly, Holloway contends that the trial court abused its discretion in denying his motion to exclude evidence of other criminal acts. For the reasons explained below, this claim fails.

At trial, Holloway moved to exclude evidence of other criminal acts under OCGA §§ 24-4-403 ("Rule 403") and 24-4-404 ("Rule 404") based on the State's opening statement, in which the State stated that Holloway, Morris, Carr, and Colvin drove to Alabama on the day of the attempted armed robbery looking for other robberies to commit. The State opposed Holloway's motion, arguing that the evidence was intrinsic to the charged crimes. The trial court denied Holloway's motion, concluding that the evidence was "intrinsic evidence that [went] to the totality of what [was] taking place that day. It [went] to define why the group was together, [and] what they were doing together." However, the trial court did not expressly

---

[5] Holloway also contends that the trial court plainly erred in failing to instruct the jury using Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.42.11 (4th ed. 2007, updated July 2024) ("principal, failure to prosecute other involved persons"), but the record shows that this exact instruction was given. This claim therefore lacks merit.

28

conclude that the evidence was admissible under Rule 403.

Rule 404 (b) generally prohibits the admission of evidence of the defendant's "other crimes, wrongs, or acts" to prove the defendant's character, but it allows such "other acts" evidence for certain limited purposes. See OCGA § 24-4-404 (b). We have said, however, that Rule 404 (b) applies only to other acts that are extrinsic to the charged crime, and that other acts that are intrinsic to the charged crime may be admissible without respect to Rule 404 (b). See, e.g., *Harris v. State*, 314 Ga. 238, 264 (3) (a) (875 SE2d 659) (2022). And Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

Starting with Holloway's contention about Rule 404 (b), the trial court determined that the evidence of the group's trip to Alabama was intrinsic to the charged crimes, and we conclude that determination was not an abuse of discretion. "Intrinsic evidence is

29

evidence that arises from the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense." *Harris*, 314 Ga. at 264 (3) (a) (citation and punctuation omitted). In applying these factors, this Court has stated that

> evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*Middlebrooks v. State*, 310 Ga. 748, 750 (2) (a) (854 SE2d 503) (2021). Additionally, "intrinsic evidence must satisfy Rule 403." *Harris*, 314 Ga. at 264 (3) (a) (citation and punctuation omitted).

Here, the evidence that Holloway, Morris, Carr, and Colvin went to Alabama to commit another robbery the same day as the charged attempted robbery "plainly pertained to the chain of events in the case and was linked in time and circumstance with the charged crimes, making the information necessary to complete the

story for the jury." *Middlebrooks*, 310 Ga. at 750 (2) (a). To begin, the trip showed that the primary purpose of Holloway's gathering the group in LaGrange was to commit robberies. Moreover, the trip occurred close in time with the attempted armed robbery because they were in Alabama approximately an hour and a half before the attempted armed robbery. And the trip occurred between Holloway's meeting in the park with Carr, Colvin, Morris, Jacobs, and O'Neal — where they planned to rob the Patels and where Holloway gave Morris and Colvin guns — and their procession to the site of the attempted armed robbery. This evidence helped the jury understand the sequence of events that occurred immediately before and built up to the attempted robbery and thus completed the story of the charged crimes. See, e.g., *Anderson v. State*, 313 Ga. 178, 182 (2) (869 SE2d 401) (2022) (explaining that the trial court did not abuse its discretion in determining that evidence of a burglary the defendant committed "roughly an hour" before the charged burglary "was a link in the chain of events leading up to the murder and completed the story of the crimes for the jury") (citation and

31

punctuation omitted); *Brown v. State*, 307 Ga. 24, 29 (2) (834 SE2d 40) (2019) (concluding that evidence the appellant committed a burglary in the same week as the charged crimes was intrinsic to the charged crimes because it was one of many in a "crime spree" and provided "a link in the chain of events leading up to the murder and completed the story of the crimes for the jury").

Additionally, the trial court did not abuse its discretion in implicitly concluding that the evidence was admissible under Rule 403. The evidence was highly probative of the timeline of events leading up to the robbery and showed that the primary purpose of the group's gathering in LaGrange was to commit robberies. Moreover, although this evidence may have incidentally placed Holloway's character in issue, any prejudicial effect did not substantially outweigh the probative value because there was no evidence that Holloway committed any crimes on the trip to Alabama. Accordingly, we cannot say that the trial court abused its discretion in denying Holloway's motion to exclude evidence of other

criminal acts.[6]

*Judgment affirmed. All the Justices concur.*

Decided January 28, 2025.

Murder. Troup Superior Court. Before Judge Hightower.

*Frances C. Kuo*, for appellant.

*John H. Cranford, Jr., District Attorney, John C. Winne, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Matthew B. Crowder, Meghan H. Hill, Senior Assistant Attorneys General*, for appellee.

---

[6] We have assumed two trial-court errors in failing to give jury instructions on the proximate-cause element of felony murder and impeachment of a witness by prior conviction. Holloway has not contended that we should conduct a cumulative-error review. We conclude that any such cumulative error does not demand a new trial. See *Haufler v. State*, 315 Ga. 712, 722 (2) n.14 (884 SE2d 310) (2023) (conducting a cumulative-error review even though the appellant did not request that the Court do so and concluding that the appellant "has failed to establish that the combined prejudicial effect of these errors requires a new trial") (citation and punctuation omitted).